S04A1700. PERDUE v. PALMOUR et al.
(600 SE2d 370)

HINES, Justice.
    This is an election contest in which George E. "Sonny" Perdue III, in his official capacity as Governor of the State of Georgia, appeals from an order of the Superior Court of Chattooga County directing Jon Payne, Election Superintendent of Chattooga County, to proceed with the July 20, 2004 primary election and the November 2, 2004 general election for the offices of Judge of the State Court of Chattooga County and Solicitor-General of Chattooga County. Inasmuch as the primary was less than a month away, this Court agreed to give expedited review of the appeal.[1] For the reasons which follow, we reverse.
    The salient facts are undisputed.[2] On April 23, 2004, Carlton Vines submitted his resignation as Judge of the State Court of Chattooga County, and on April 26, 2004, he qualified for the office of Solicitor-General of Chattooga County. He was unopposed. Albert C. Palmour, after "vacating" his position as the county's solicitor-general on April 23, 2004, qualified to run for the office of Judge of the State Court of Chattooga County.[3] Eddie Hurley and Samuel Finster also qualified to run for the state court judgeship.
    After the period for qualifying ended and the candidates had begun campaigning for the offices for which they had qualified, Superintendent Payne, through his attorney of record, received oral

---

[1] The appeal and the motion for expedited consideration were filed in this Court on June 21, 2004.
    [2] The parties entered into a stipulation of facts.
    [3] The record shows that Palmour sent Governor Perdue a letter dated April 23, 2004 stating: "I am vacating the office of the Solicitor General by qualifying for the State Court Judges position." The record also contains a letter dated May 3, 2004, in which Governor Perdue accepted Palmour's resignation.

notice from Governor Perdue's executive counsel that the governor had received and accepted the resignations of Vines and Palmour, that the governor intended to fill by appointment the vacancies created by the resignations, and that the appointees would serve for the current unexpired terms and until January 1, 2007. Payne met with the candidates and informed them of the governor's intention to fill the offices by appointment, and that in light of the governor's decision, he was cancelling the elections for the offices of judge of the state court and solicitor-general and refunding the qualifying fees. Prior to formal cancellation of the election process and reimbursement of the fees, on May 12, Palmour filed a "Complaint for Interpleader and Declaratory Judgment"[4] protesting Payne's proposed cancellation of the upcoming primary and general elections for the offices at issue.[5] On May 17, the Superior Court of Chattooga County issued an order temporarily enjoining and prohibiting any official from returning the qualifying fees to the four candidates for state court and solicitor-general and directing that the officials in charge of the July 20 primary election proceed with the printing of the ballots containing the names of such candidates. On June 10, the superior court entered an amended order requiring that the July 20 and November 2 elections proceed.

The superior court erred in its ruling. The matter is resolved by the clear and unambiguous provisions of state statutes and the 1983 Georgia Constitution. A state office is deemed vacated by resignation, when accepted. OCGA § 45-5-1 (a) (2). As to judicial vacancies in general, 1983 Ga. Const., Art. VI, Sec. VII, Par. III provides that such vacancies "shall be filled by appointment of the Governor except as otherwise provided by law in the magistrate, probate, and juvenile courts." The governor's authority to appoint in the specific situations of vacancies in the office of judge of the state court and the office of solicitor-general of the state court is also addressed by statute. See OCGA §§ 15-7-23; 15-18-60 (b). The parties agree that Governor Perdue has the right to appoint successors to the two vacant offices. The issue is the term of the appointments.

The superior court cites, inter alia, 1983 Ga. Const., Art. V, Sec. II, Par. VIII (a) which states:

> When any public office shall become vacant by death, resignation, or otherwise, the Governor shall promptly fill such

---

[4] The complaint sought mandamus relief as well.

[5] Initially, the action was filed against Payne, as Election Superintendent of Chattooga County. Ultimately, Vines, Hurley, and Finster were joined as party plaintiffs, Governor Perdue was made a party defendant, and a counterclaim for declaratory judgment by Payne was denominated a cross-claim against Governor Perdue.

vacancy unless otherwise provided by this Constitution or by law; and persons so appointed shall serve for the unexpired term unless otherwise provided by this Constitution or by law.

This provision is not a part of judicial Article VI of the State Constitution, but rather is found in Article V, which addresses the executive branch. Judicial Article VI of the 1983 Georgia Constitution expressly provides for the period of service of appointees to an elective office:

An appointee to an elective office shall serve until a successor is duly selected and qualified and until January 1 of the year following the next general election which is more than six months after such person's appointment.

1983 Ga. Const., Art. VI, Sec. VII, Par. IV. This "six month provision" mandates that if the appointment is made within six months of the next general election, the appointee will remain in office beyond the time of the unexpired term and until the first of the year following the next general election and until a successor is duly selected and qualified. The governor asserts that the appointments in this case will necessarily occur within six months of the upcoming general election.[6] The next general election applicable to the present case will not occur until 2006.[7] Therefore, assuming a successor is duly selected and qualified, the governor's appointees would serve until January 1, 2007.

The superior court found that application of the six month provision would render null and void the language in 1983 Ga. Const., Art. V, Sec. II, Par. VIII (a) that the appointee "shall serve for the unexpired term" as well as the requirement under 1983 Ga. Const., Art. VI, Sec. VII, Par. I that "[a]ll superior court and state court judges shall be elected on a nonpartisan basis for a term of four years." But, even assuming arguendo, the applicability of 1983 Ga. Const., Art. V, Sec. II, Par. VIII (a), such analysis plainly overlooks the additional express language in that constitutional provision that the appointee is to serve for the unexpired term "unless otherwise provided by this Constitution or by law." The 1983 Georgia Constitution clearly mandates "otherwise" by the inclusion of the six month provision.

Citing *Hooper v. Almand*, 196 Ga. 52 (25 SE2d 778) (1943), the superior court concluded that "appointments should be utilized to fill vacancies only until a general election can be held" and that the

---

[6] See OCGA § 9-4-2 (a) & (b).

[7] See OCGA §§ 21-2-9; 21-2-138; 21-2-150.

"Governor's power of appointment should not override the people's right to vote." However, the superior court's reliance on *Hooper v. Almand* to find that the extent of the appointments can be only for the remainder of the unexpired term is misplaced. The decision in *Hooper v. Almand* was premised upon a very different constitutional requirement, Ga. Const. of 1877, as amended, Art. VI, Sec. III, Par. III, and predated by 40 years the six month provision in the 1983 Georgia Constitution.[8] The obsolescence of *Hooper v. Almand* in light of the six month provision has been recognized in recent decisions by the United States District Court.[9]

The six month provision was made a part of the State Constitution to address precisely the situation in this case. The rationale for the drafting of the six month provision in Paragraph IV has been explicitly explained:

> The Constitution does not provide uniformly for the term of an appointee when a vacancy is filled. The proposal sets out such a provision, which will apply alike to any office covered in the Judicial Article. The appointee's term will be at least approximately eight months (to the next January 1), and not less than six months before he is required to run for a full term. Thus, on one side of the coin, someone appointed to fill a vacancy occurring at the beginning of a six-year term will not be immune from voter consideration for that entire period; he would have to run in the next general election. On the other side of the coin, someone appointed between June and November of a general election year would not have to run immediately and would have a little over two years to demonstrate his qualifications as a judge or state's attorney. This is a practical balance between democracy and stability.

1986 Op. Att'y Gen. 86-31, quoting Transcripts of Meetings, Select Committee on Constitutional Revision, Legislative Overview Committee, Vol. III, Aug. 7, 1981. See also 1984 Op. Att'y Gen. 84-34. The six month provision was not intended to, nor does it in fact, disenfranchise voters. It is not in conflict with the mandate in 1983 Ga. Const., Art. VI, Sec. VII, Par. I that superior court and state court

---

[8] At the time of the decision in *Hooper v. Almand,* the relevant provision stated:
Every vacancy occasioned by death, resignation, or other causes shall be filled by appointments of the Governor until the first day of January after the general election held next after the expiration of thirty days from the time such vacancy occurs, at which election a successor for the unexpired term shall be elected.
Ga. Const. of 1877, as amended, Art. VI, Sec. III, Par. III.

[9] *Hornsby v. Barnes*, Case No. 1:02-CV-1812-GET (N.D. Ga., July 22, 2002); *McKinney v. Cleland*, Case No. 1:90-CV-2277-HTW (N.D. Ga., April 11, 1991).

judges are to be elected on a nonpartisan basis for a four-year term. As its drafters envisioned, the six month provision gives the voters the right to select the holders of elective office, yet affords the appointee a sufficient opportunity to demonstrate the merit, or lack thereof, of the appointee's service. Compare *Duncan v. Poythress*, 657 F2d 691 (5th Cir. 1981).

This case is not resolved by a subjective opinion of how extensive the power of the governor should be in regard to appointments to elective office. It is determined by the unambiguous mandate of the constitution as ratified by the voters of Georgia. It is about implementing the last expression of the sovereign will of the people, in this case, the six month provision of 1983 Ga. Const., Art. VI, Sec. VII, Par. IV.

The various provisions of the constitution are not to be interpreted as contradictory, but rather are to be construed in harmony with one another. *Lucas v. Woodward*, 240 Ga. 770, 774 (243 SE2d 28) (1978). The decision by the Superior Court of Chattooga County completely negates the six month provision of 1983 Ga. Const., Art. VI, Sec. VII, Par. IV. Consequently, the superior court erred in directing the Election Superintendent of Chattooga County to proceed with the July 20, 2004 primary election and the November 2, 2004 general election for the offices of Judge of the State Court of Chattooga County and Solicitor-General of Chattooga County. The judgment cannot stand.

*Judgment reversed. All the Justices concur, except Benham, J., who concurs in judgment only.*

CARLEY, Justice, concurring.

I agree with the majority opinion, but write separately only to emphasize that, unlike the prior constitutional provisions considered in *Hooper v. Almand*, 196 Ga. 52 (25 SE2d 778) (1943), Art. VI, Sec. VII, Par. IV of the Georgia Constitution of 1983 eliminates the unexpired term of the vacant office, as well as any need for a gubernatorial appointee to run therefor. Instead, that paragraph establishes a new term of office, four years in this case or six years for appellate judges, for which the appointee must be allowed to stand for election. 1986 Op. Att'y Gen. 86-31. See also 1984 Op. Att'y Gen. 84-34. However, he or she must also be permitted to remain in office for at least six months prior to the next general election. Thus, our present constitutional scheme does not contemplate the preservation of the previously scheduled election process.

DECIDED JULY 13, 2004.

*Thurbert E. Baker, Attorney General, Stefan E. Ritter, Assistant Attorney General*, for appellant.

*Edward F. Hurley, Farrar & Corbin, Christopher L. Corbin, Samuel C. Finster, Sr., Carlton Vines, Johnny R. Dennis*, for appellees.

*Albert C. Palmour, Jr.*, pro se.