In the Supreme Court of Georgia

Decided:  October 6, 2014

S14A0779.  HEISKELL, COMR., et al. v. ROBERTS.

NAHMIAS, Justice.

Bruce Roberts filed suit against Walker County and its sole commissioner, Bebe Heiskell (collectively, "Appellants"), claiming that the county underpaid him for the 15 months that he served as judge of the State Court of Walker County.  Appellants denied any underpayment, denied Roberts's request to pay his legal fees in connection with the case, and filed counterclaims alleging among other things that the county actually overpaid Roberts each month and was entitled to reimbursement for the overpayments.  On cross-motions for summary judgment, the trial court granted Roberts's mandamus claim and ordered the county to pay him $78,878.55 in unpaid salary; dismissed Appellants' counterclaims as barred by judicial immunity; and ordered the county to pay Roberts's attorney fees.

As explained below, the trial court erred in granting summary judgment on the mandamus claim to Roberts instead of to Appellants, in dismissing Appellants' counterclaim for reimbursement, and in granting attorney fees to Roberts based on these erroneous rulings. However, the trial court properly dismissed Appellants' other counterclaims based on judicial immunity and correctly ruled that the county could be required to pay attorney fees to Roberts under OCGA § 9-15-14 based on the dismissed counterclaims. Accordingly, we affirm the trial court's judgment in part and reverse it in part, and we remand the case for the entry of a more limited attorney fees award and to allow Appellants the opportunity to pursue their counterclaim for reimbursement.

1.      In 2010, Judge C. Donald Peppers, Sr. of the State Court of Walker County was reelected to a four-year term of office that started on January 1, 2011. Effective June 30, 2011, Judge Peppers retired after 26 years in office; at the time he retired, he was allegedly making $172,102.80 per year, although a portion of his salary was reimbursed by Catoosa County for his service as a part-time judge in that neighboring county. On September 16, 2011, Governor Nathan Deal announced that he would appoint Bruce Roberts to fill the vacancy.

On September 30, 2011, Roberts met with Bebe Heiskell, Walker County's sole commissioner. Heiskell informed Roberts that the base salary for the state court judge position was $60,000 per year, see Ga. L. 1994, p. 3726, § 1, but she allegedly offered to pay him at the rate of $100,000 per year, slightly more than the $94,000 that he was making in his previous job. Roberts requested $110,000, but Heiskell declined, citing budget constraints. Roberts was sworn into office on October 3, 2011. He stood for election in the next nonpartisan general election in July 2012, but he lost, meaning that his term of office would end on the last day of 2012. During the period following his defeat, Roberts dismissed about 60 traffic cases. The county paid Roberts at an annualized rate of $100,000 for the 15-month period that he held office.

On October 25, 2012, Roberts filed a complaint for mandamus and other relief against Commissioner Heiskell (in her official capacity) and Walker County. Roberts sought to recover the difference between what he was being paid and what Judge Peppers would have been paid for the same period based on the provision of Article VI, Section VII, Paragraph V of the Georgia Constitution of 1983 that says: "An incumbent's salary, allowance, or supplement shall not be decreased during the incumbent's term of office."

Roberts also asked for the county to provide him with legal representation, but the county did not do so. Appellants filed an answer and counterclaims for breach of contract, "intentional infliction of monetary damages," and intentional infliction of emotional distress, all based on Roberts's dismissal of the traffic cases. Appellants later added a counterclaim seeking reimbursement of all salary paid to Roberts at an annualized rate greater than $60,000; the alleged overpayments totaled about $50,000.

Roberts filed a motion for summary judgment, and Appellants filed a cross-motion for partial summary judgment. After a hearing, the trial court entered an order on October 30, 2013, granting Roberts's mandamus claim and directing Commissioner Heiskell to pay him $78,878.55 from county funds for "salary due and unpaid," dismissing Appellants' counterclaims as barred by judicial immunity, and requiring Appellants to pay Roberts's attorney fees based in part on Gwinnett County v. Yates, 265 Ga. 504 (458 SE2d 791) (1995), and in part on OCGA § 9-15-14.[1] The court also dismissed Walker County as a defendant with respect to Roberts's mandamus claim, but left the county as a

---

[1] The amount of attorney fees has not yet been determined.

4

defendant on Roberts's claim for attorney fees based on Appellants' counterclaims. Appellants filed a timely notice of appeal.[2]

2. Citing cases involving magistrate judges, the trial court held that Roberts was entitled to the same compensation that Judge Peppers was receiving because Roberts was appointed to the "unexpired term" of Judge Peppers that began on January 1, 2011, and ended on December 31, 2014. In the trial court's view, Roberts's appointment allowed him to serve the portion of Judge Peppers's four-year term that ran from the date that Roberts was sworn in, October 3, 2011, through the end of 2012, with the requirement that he run in and win the July 2012 election in order to serve the portion of Judge Peppers's term that ran from January 1, 2013, through the end of 2014. That is not, however, the scheme that the 1983 Georgia Constitution established for the terms of office for judges appointed to fill vacancies on our appellate, superior, and state courts.

---

[2] On February 17, 2014, Roberts filed a motion to dismiss the appeal on the ground that Appellants were required to file an application for discretionary appeal and failed to do so, citing OCGA § 5-6-35 (a) (10), which requires the filing of an application for "[a]ppeals from awards of attorney's fees or expenses of litigation under Code Section 9-15-14." On March 10, we denied the motion based on OCGA § 5-6-34 (d), which permits Appellants to challenge the attorney fees rulings without filing an application as part of their direct appeal of the mandamus order authorized by OCGA § 5-6-34 (a) (7). See Stancil v. Gwinnett County, 259 Ga. 507, 508 (384 SE2d 666) (1989).

This case is controlled by several provisions of Section VII ("Selection, Term, Compensation, and Discipline of Judges") of Article VI ("Judicial Branch") of the 1983 Constitution. Paragraph I of the section says:

> All superior court and state court judges shall be elected on a nonpartisan basis for a term of four years. All Justices of the Supreme Court and the Judges of the Court of Appeals shall be elected on a nonpartisan basis for a term of six years. The terms of all judges thus elected shall begin the next January 1 after their election. . . .

Paragraph III says that vacancies in these judicial offices will be filled by gubernatorial appointment, and Paragraph IV then says that such an appointee "shall serve until a successor is duly selected and qualified and until January 1 of the year following the next general election which is more than six months after such person's appointment."

The effect of these provisions is to create an entirely new and shortened initial term of office for the appointed judge. Unlike persons appointed to fill vacancies in most other public offices, appointees to state, superior, and appellate judgeships do not serve out the "unexpired term" of their predecessors.[3] Rather, these judicial appointees must be elected before being

---

[3] Thus, in contrast to the provisions of the Judicial Branch Article, the Executive Branch Article says:

6

entitled to serve a full four- or six-year term, although they are given at least six months to serve before they have to stand for election. As this Court explained in Perdue v. Palmour, 278 Ga. 217 (600 SE2d 370) (2004):

> "The Constitution does not provide uniformly for the term of an appointee when a vacancy is filled [on these courts]. . . . The appointee's term will be at least approximately eight months (to the next January 1), and not less than six months before he is required to run for a full term. Thus, on one side of the coin, someone appointed to fill a vacancy occurring at the beginning of a six-year term will not be immune from voter consideration for that entire period; he would have to run in the next general election. On the other side of the coin, someone appointed between June and November of a general election year would not have to run immediately and would have a little over two years to demonstrate his qualifications as a judge . . . . This is a practical balance between democracy and stability."

Id. at 220 (citation omitted).[4]

---

When any public office shall become vacant by death, resignation, or otherwise, the Governor shall promptly fill such vacancy unless otherwise provided by this Constitution or by law; and persons so appointed shall serve for the *unexpired term* unless otherwise provided by this Constitution or by law.

Art. V, Sec. II, Par. VIII (a) (emphasis added). See also Par. VIII (b) (providing that in case of death or withdrawal of the winner of an election for Secretary of State, Attorney General, State School Superintendent, Commissioner of Insurance, Commissioner of Agriculture, or Commissioner of Labor, the incoming Governor shall appoint, with Senate confirmation, a replacement to serve until the next general election and until a successor has been elected and qualified to serve out "the balance of the *unexpired term*" (emphasis added)).

[4] We note that the "at least approximately eight months" calculation in Palmour was based on general elections for these judges being held in November, as they were in 2004. These judges are now elected in the nonpartisan general election held jointly with the partisan general primary

7

Thus, there is no longer such a thing as an appointment to serve out the "unexpired term" of an appellate, superior, or state court judge. See id. at 221 (Carley, J., concurring) ("[U]nlike the prior constitutional provisions . . . , Art. VI, Sec. VII, Par. IV of the Georgia Constitution of 1983 eliminates the unexpired term of the vacant office . . . ."). For an appointed state court judge, the "definite extent of time [his] elective office may be held," Lee v. City of Villa Rica, 264 Ga. 606, 609 (449 SE2d 295) (1995) (defining "term of office" in this way), is not determined at all by his predecessor's term of office, and indeed cannot be determined until he is appointed and assumes the office.

Like the trial court, Roberts relies on cases involving the salaries of *magistrate* judges who were appointed to fill vacancies. See Pike County v. Callaway-Ingram, 292 Ga. 828 (742 SE2d 471) (2013); Lee v. Peach County Bd. of Comrs., 269 Ga. 380 (497 SE2d 562) (1998). This reliance is misplaced. The same Article and Section of the 1983 Constitution that abolished the old system for the selection and terms of office of appellate, superior, and state court judges explicitly preserved the then-existing system for "[a]ll other judges . . .

_____

earlier in even-numbered years – on July 31 of 2012, for example. See OCGA § 21-2-138.

8

until otherwise provided by local law" and authorized the filling of "[v]acancies . . . in the magistrate, probate, and juvenile courts" by methods other than gubernatorial appointment if "otherwise provided by law." Art. VI, Sec. VII, Par. I and III. "[T]o implement certain changes required by Article VI of the [1983] Constitution," Ga. L. 1983, p. 884, § 1-1, the General Assembly enacted a law concerning magistrate courts that contained the following provision:

> Unless otherwise provided by local law, a vacancy in the office of chief magistrate shall be filled by an appointment by majority vote of the judges of superior court *for the remainder of the unexpired term*; and a vacancy in the office of any other magistrate shall be filled by an appointment by the chief magistrate with the consent of the judges of superior court *for the remainder of the unexpired term*. . . .

Id., § 2-1, at pp. 888-889 (codified at OCGA § 15-10-20 (e)) (emphasis added).

At the same session, the General Assembly passed a law concerning state courts that contained the following provision:

> In the event of a vacancy in the office of judge of the state court for any reason except the expiration of the term of office, the Governor shall appoint a qualified person who shall serve *as provided in Paragraphs III and IV of Section VII of Article VI of the Constitution*.

Ga. L. 1983, p. 1419, § 2, at p. 1422 (codified as amended at OCGA § 15-7-23) (emphasis added). Unlike the statute concerning magistrate court judges, the

9

statute concerning state court judges does not refer to "the remainder of the unexpired term," because under the 1983 Constitution, that concept no longer has any application to judges appointed to fill vacancies on state courts.

Accordingly, as a state court appointee, Roberts's initial (and, as it turned out, only) "period of service," Palmour, 278 Ga. at 219, was from his swearing in on October 3, 2011, through December 31, 2012. Had Roberts won the election in July 2012, he would have served a new, full, four-year term as a state court judge starting on January 1, 2013, and continuing through December 31, 2016; he would not have served only through the end of 2014, which is when Judge Peppers's four-year term that started on January 1, 2011, would have ended had he not retired. In short, Roberts did not become the incumbent serving Judge Peppers's term of office; he served his own, 15-month-long term. And it is undisputed that Roberts was paid the same salary for the entire 15 months. Thus, there was no violation of the provision in Article VI, Section VII, Paragraph V that prevents an incumbent judge's salary from being decreased during his term of office, and we therefore reverse the trial court's grant of summary judgment to Roberts and its denial of summary judgment to Appellants on the mandamus claim.

10

3. Appellants contend that the trial court erred in ruling that their counterclaims were barred by judicial immunity. Judges are "immune from liability in civil actions for acts performed in their judicial capacity." Earl v. Mills, 275 Ga. 503, 504 (570 SE2d 282) (2002). This doctrine of judicial immunity, which the Supreme Court of the United States has said "is as old as the law," is essential to the impartial administration of justice. Randall v. Brigham, 74 U.S. (7 Wall.) 523, 536 (19 LE 285) (1869). See also Calhoun v. Little, 106 Ga. 336, 339 (32 SE 86) (1898) (describing the doctrine of judicial immunity as "firmly fixed in the jurisprudence of both England and the United States"). Judicial immunity is overcome in only two situations:

> First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

Mireles v. Waco, 502 U.S. 9, 11-12 (112 SCt 286, 116 LE2d 9) (1991) (citations omitted). Accord Wilson v. Moore, 275 Ga. App. 493, 494 (621 SE2d 507) (2005). See also In re Morales, 282 Ga. 471, 472 (651 SE2d 84) (2007) (citing Mireles and noting "the well settled law that judges acting within their judicial capacity are immune from suit for money damages").

(a)    Appellants' counterclaims against Roberts for breach of contract, "intentional infliction of monetary damages," and intentional infliction of emotional distress were based on his dismissal of about 60 traffic cases after his defeat in the July 2012 general election.  The trial court correctly concluded that Roberts was exercising a judicial function when he dismissed the traffic cases, because adjudication of such cases is a function normally performed by a judge.  See Mireles, 502 U.S. at 12-13.  Moreover, Appellants do not dispute that the State Court of Walker County has subject matter jurisdiction over traffic cases such as the ones that Roberts dismissed, much less claim that he acted in the "complete absence of all jurisdiction" over such cases.  Id. at 12.

Appellants' argument that judicial immunity applies only to "claims" brought against a judge and not to "counterclaims" brought against a judge is baseless.  A "counterclaim" is simply the way that a defendant brings a "claim" against the plaintiff in an existing lawsuit.  OCGA § 9-11-13 (a), (b).  Such claims do not avoid immunity defenses because they are labeled "counterclaims."  See OCGA § 9-11-13 (d); Dept. of Human Resources v. Money, 222 Ga. App. 149, 149 (473 SE2d 200) (1996) (applying sovereign immunity to counterclaims).  See also Hudson View II Assocs. v. Miller, 664

12

NYS2d 223, 224 (N.Y. Sup. Ct. 1997) (applying judicial immunity to counterclaims); Walton v. Watts (In re Swift), 185 B.R. 963, 970 (Bankr. N.D. Ga. 1995) (applying quasi-judicial immunity to counterclaims). Accordingly, the trial court properly dismissed the counterclaims based on Roberts's handling of traffic cases as barred by judicial immunity.

(b) Appellants' counterclaim to recover alleged salary overpayments to Roberts is a different matter. The trial court did not specifically address this counterclaim in its order, but receiving an incorrectly calculated paycheck plainly is not a judicial function. See Forrester v. White, 484 U.S. 219, 227-229 (108 SCt 538, 98 LE2d 555) (1988) (discussing the distinction "between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges," and explaining that it is "the nature of the function performed, not the identity of the actor who performed it," that informs the immunity analysis). See also Maddox v. Hayes, 278 Ga. 141, 142 (598 SE2d 505) (2004). Thus, judicial immunity did not bar

13

Appellants' counterclaim for reimbursement, and we therefore reverse the dismissal of that counterclaim.[5]

4. In light of the above holdings, the trial court's award of attorney fees to Roberts must be limited.

(a) The trial court ordered Appellants to pay Roberts's reasonable attorney fees resulting from the mandamus action pursuant to Gwinnett County v. Yates, 265 Ga. 504 (458 SE2d 791) (1995), in which this Court held:

> [W]here . . . an official, acting in his official capacity, is required to hire outside counsel to assert a legal position the local government attorney cannot (because of a conflict in representing the local government) or will not assert, and the official is successful in asserting his or her position, the local government must pay the official's attorney fees. This is not because of any bad faith or improper conduct on the part of the local government . . . . Rather,

---

[5] Other than holding that the reimbursement counterclaim is not barred by judicial immunity, we express no opinion on the merits of the claim. We note, however, that the claim may depend at least in part on whether the annualized $40,000 supplement paid to Roberts above the $60,000 base salary established by local law was properly approved and documented in a budget or other county ordinance. OCGA § 15-7-22 says, "Judges of the state courts shall be compensated from county funds as provided by local law. . . .," which for Walker County says that "[t]he judge of said state court shall receive a salary of $60,000.00 per annum," Ga. L. 1994, p. 3726, § 1. OCGA § 15-7-22 also says, "The county governing authority is authorized to supplement the compensation thus fixed to be paid to the judges of the state court of that county," but even in a county with a sole commissioner form of government, ordinances must be put in writing and filed in the official records of the commissioner in order to be effective. See Mortgage Alliance Corp. v. Pickens County, 294 Ga. 212, 217-218 (751 SE2d 51) (2013). Moreover, the county cannot be estopped from seeking reimbursement based on any commitments that Commissioner Heiskell may have made to Roberts in the exercise of an unconferred power. See City of Baldwin v. Woodard & Curran, Inc., 293 Ga. 19, 27-29 (743 SE2d 381) (2013); Maddox, 278 Ga. at 142.

14

attorney fees in this instance are simply an expense of government operation.

Id. at 508-509.  As Yates says, the official's entitlement to attorney fees depends on his success in asserting his position in court.  See Board of Comrs. of Dougherty County v. Saba, 278 Ga. 176, 179 (598 SE2d 437) (2004).  Because we hold in Division 2 above that the trial court erred in granting summary judgment on the mandamus claim to Roberts instead of to Appellants, Roberts has not prevailed on that claim, and we therefore reverse the attorney fees award based on Yates.

(b)  The trial court also ordered Appellants to pay Roberts's reasonable attorney fees incurred in defending against Appellants' counterclaims.  This award was based on OCGA § 9-15-14, "which authorizes a trial court to award 'reasonable and necessary' attorney fees and litigation costs in civil cases against a party that has engaged in abusive litigation." Williams v. Becker, 294 Ga. 411, 413 (754 SE2d 11) (2014).  OCGA § 9-15-14 (a) requires an assessment of attorney fees and litigation expenses against any party that has "asserted a claim . . . with respect to which there existed such a

15

complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept [the claim]."

The trial court concluded that Appellants' counterclaims fit this description. We agree that the counterclaims for breach of contract, "intentional infliction of monetary damages" (whatever that is), and intentional infliction of emotional distress based on Roberts's dismissal of the traffic cases were totally lacking in legal justification because they were unquestionably barred by judicial immunity. However, as discussed in Division 3 (b) above, the trial court erred in dismissing Appellants' counterclaim for reimbursement of alleged salary overpayments to Roberts. It follows that the court erred in awarding Roberts attorney fees incurred in defending against that counterclaim, and we therefore reverse the award made under § 9-15-14 to the extent that it was based on the reimbursement counterclaim. See Hardman v. Hardman, Case No. S14A1187 (decided Sept. 22, 2014), 2014 WL 4667538, at *6. On remand, the trial court should enter an award based solely on Roberts's reasonable attorney fees and litigation expenses incurred in defending against the other three counterclaims. See id.

(c)     Finally, Appellants argue that the trial court erred in failing to dismiss the county as a defendant with respect to Roberts's claim for attorney fees under OCGA § 9-15-14 because the county was not a proper defendant as to his mandamus claim, as the trial court held.  However, § 9-15-14 (a) requires a trial court to award reasonable attorney fees to "any party against whom another party has asserted a claim" that is so completely lacking in legal or factual substance that it could not reasonably be believed that a court would accept the claim.  The statute does not exclude frivolous claims asserted by a party that believes it should not have been named in the lawsuit, and Appellants have pointed us to no authority supporting such an exception.  Indeed, with respect to the counterclaims it brought, the county was acting as a plaintiff, not a defendant.  Accordingly, the trial court did not err in dismissing the county as a defendant only with respect to Roberts' s mandamus claim, leaving the county as a defendant on his claim for attorney fees based on the groundless counterclaims that the county elected to file.

Judgment affirmed in part and reversed in part, and case remanded with direction.  All the Justices concur.

17