In the Supreme Court of Georgia

Decided: April 26, 2016

S16A0559. CLARK et al. v. DEAL, GOVERNOR et al.
S16X0560. DEAL, GOVERNOR v. CLARK et al.

MELTON, Justice.

In this action, John Clark, Ivory Kenneth Dious, Francys Johnson, Jr., Henry C. Ficklin, and Darryl A. Momon (collectively referred to as "Clark") contend that Amanda H. Mercier, Nels S.D. Peterson, and Brian M. Rickman have no right to hold office as judges on our Court of Appeals.[1] Specifically, Clark contends that these new judges were improperly appointed by Governor Nathan Deal. For the reasons set forth below, we affirm the trial court's denial of Clark's petition for a writ of quo warranto.

1. The underlying facts of this case are not disputed. Effective on January 1, 2016, Act No. 138 (House Bill 279 or the "Act") established three new seats on the Court of Appeals, amending OCGA § 15-3-1 (a) to provide for a total of

---

[1] "The writ of quo warranto may issue to inquire into the right of any person to any public office the duties of which he is in fact discharging." OCGA § 9–6–60.

15 judges. In addition, OCGA § 15-3-4 was amended to add subsection (b), which provides in relevant part: "The additional judgeships created in 2015 shall be appointed by the Governor for a term beginning January 1, 2016, and continuing through December 31, 2018, and until their successors are elected and qualified." Pursuant to the Act, Governor Deal appointed Mercier, Peterson, and Rickman to the new positions. A short time after the Governor announced the appointments, but before the announced appointees took office, Clark filed a petition to challenge the appointments in the Superior Court of Fulton County, naming as defendants the Governor in his official capacity, Mercier, Peterson, and Rickman. Clark argued that the gubernatorial appointment of Court of Appeals judges to newly created seats violated the Georgia Constitution, maintaining that new judges are required to be chosen by general election. Accordingly, Clark requested the following: (1) a declaratory judgment that the appointment provision of the Act is unconstitutional; (2) an injunction and temporary restraining order against the Governor to stop him from commissioning or administering the oath of office to the new judges; and (3) a writ of quo warranto against Mercier, Peterson, and Rickman.

The trial court denied Clark's petition on the merits. After considering the

2

Georgia Constitution, related statutory authority, and the history of judicial appointments to the Court of Appeals, the trial court held that the 1983 Georgia Constitution permits the Governor to fill newly created seats on the Court of Appeals by appointment. Clark then appealed, and, in addition, filed an emergency motion for supersedeas, again to prevent the Governor from administering the oath of office to the appointees. This Court denied the emergency motion on December 18, 2015. The Governor also filed a cross-appeal, contending that the trial court erred in its determination that sovereign immunity did not protect him from the injunction and declaratory judgment action brought against him. The new Court of Appeals judges took office on January 1, 2016.

2. Initially, we must determine what part, if any, of Clark's action remains viable. Because the new judges have already taken office, those portions of Clark's action relating to the issuance of a declaratory judgment, injunctive relief, and a temporary restraining order against the Governor are now moot, as the very action which Clark sought to stop has already occurred. "[I]f the thing sought to be enjoined in fact takes place, the grant or denial of the injunction becomes moot." (Citations and punctuation omitted.) Board of Commrs. of

3

Richmond County v. Cooper, 259 Ga. 785 (387 SE2d 138) (1990). A case is moot when its resolution would amount to the determination of an abstract question not arising upon existing facts or rights. See Chastain v. Baker, 255 Ga. 432 (339 SE2d 241) (1986). Based on this same reasoning, the Governor's cross-appeal is moot as well. The Governor was never prevented from swearing in and commissioning the new judges, and, therefore, there is no longer any reason to consider whether Clark's unsuccessful attempt to enjoin and obtain a declaratory judgment against the Governor was barred by sovereign immunity. So, the only remaining part of this action which remains viable is Clark's petition for a writ of quo warranto, which became ripe at the time that the new judges assumed office. Accordingly, this opinion addresses only that portion of the underlying suit.

3. Throughout this litigation, Clark has contended that OCGA § 15-3-4 (b) is unconstitutional because the Georgia Constitution requires that Court of Appeals judges who fill newly created seats must be selected by a general nonpartisan election. The Constitution, itself, belies this claim in Article VI, which address the judicial branch of government.

Art. VI, Sec. VII, Par. I. does provide that

4

[a]ll superior court and state court judges shall be elected on a nonpartisan basis for a term of four years. All Justices of the Supreme Court and the Judges of the Court of Appeals shall be elected on a nonpartisan basis for a term of six years. The terms of all judges thus elected shall begin the next January 1 after their election. All other judges shall continue to be selected in the manner and for the term they were selected on June 30, 1983, until otherwise provided by local law.

Likewise, OCGA § 21-2-9 (b) provides that Court of Appeals judges "shall be elected in the nonpartisan general election next preceding the expiration of the term of office." However, Art. VI, Sec. VII, Par. III expressly states that "*[v]acancies* shall be filled by appointment of the Governor except as otherwise provided by law in the magistrate, probate, and juvenile courts." (Emphasis supplied.) Therefore, the Constitution clearly allows the Governor to appoint new judges when there is a vacancy on the Court of Appeals. The only remaining question, then, is whether a newly created position on the Court of Appeals qualifies as a "vacancy" under Art. VI, Sec. VII, Par. III. Both the appropriate rules of construction and the historical record indicate that it does.[2]

---

[2] Clark argues that, without exception, Art. VI, Sec. VII, Par. I requires *all* Court of Appeals judges to be elected in a nonpartisan election. This argument, however, ignores other constitutional provisions which clearly show that there are exceptions to this rule. The power of the Governor to make appointments in the case of vacancies, itself, is such an exception. This is further exemplified by

(a) In reviewing the propriety of OCGA § 15-3-4 (b), it must be remembered that "all presumptions are in favor of the constitutionality of [a statute]." (Citation and punctuation omitted.) JIG Real Estate, LLC v. Countrywide Home Loans, Inc., 289 Ga. 488, 490 (2) (712 SE2d 820) (2011). Furthermore, we must "presume that the words used in the Constitution bear their ordinary meanings at the time those words were included. See Warren v. State, 294 Ga. 589, 590 (755 SE2d 171) (2014)." Savage v. State, 297 Ga. 627, 635 (4) (b) (774 SE2d 624) (2015). "'Constitutions, like statutes, are properly to be expounded in the light of conditions existing at the time of their adoption.' [Cit.]" Clarke v. Johnson, 199 Ga. 163, 166 (33 SE2d 425) (1945).

At the time that the Governor was given the power to appoint appellate judges to fill vacancies in the 1983 Constitution, Black's Law Dictionary stated that "vacancy," when applied to official positions, meant, "in its ordinary and popular sense, that an office is unoccupied, and that there is no incumbent who has a lawful right to continue therein until the happening of a future event,

Art. VI, Sec. VII, Par. IV, which provides: "An appointee to an elective office shall serve until a successor is duly selected and qualified and until January 1 of the year following the next general election which is more than six months after such person's appointment."

though the word is sometimes used with reference to an office temporarily filled." Black's Law Dictionary 1388 (5ᵗʰ ed. 1979). As noted by the trial court, a standard dictionary likewise defined "vacancy" as follows: "1. The condition of being vacant or unoccupied. 2. An empty or unoccupied space. 3. A position, an office, or a place of accommodation that is unfilled or unoccupied." The American Heritage Dictionary of the English Language 1969 (3d ed. 1979). Our own cases, both before and after the ratification of the 1983 Constitution, give the term "vacant" a similar definition. See Pittman v. Ingram, 184 Ga. 255, 256-257 (190 SE 794) (1937) ("office is not vacant so long as it is supplied, in the manner provided by the constitution or law, with an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it") (Citation omitted.); Parkerson v. Hart, 200 Ga. 660, 664 (38 SE2d 397) (1946) ("[w]hen there is no one to fill the office, a vacancy exists") (Citation omitted.); Garcia v. Miller, 261 Ga. 531 (2) (408 SE2d 97) (1991) (office is not vacant so long as it is filled by an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it).

Therefore, the ordinary meaning of the term vacancy is, in essence, a public office without an incumbent. The newly created positions on the Court

7

of Appeals certainly fit this definition. See also 63C AmJur2d Public Officers & Employees § 111 ("[A] newly created office, which is not filled by the tribunal which created it, becomes vacant on the instant of its creation, and remains so until it is filled by an incumbent. The term 'vacancy' thus applies to an existing office without an incumbent, though it has never been filled."); Throop, A Treatise on the Law Relating to Public Officers and Sureties in Official Bonds § 431 (1892) ("An existing office without an incumbent is vacant, whether it be a new or an old office."). Accordingly, the constitutionality of OCGA § 15-3-4 (b) is supported by this ordinary definition and plain meaning.

Nonetheless, Clark contends that we should look to OCGA § 45-5-1 [3] to

---

[3] This statute provides:
 (a) All offices in the state shall be vacated:
(1) By the death of the incumbent;
(2) By resignation, when accepted;
(3) By decision of a competent tribunal declaring the office vacant;
(4) By voluntary act or misfortune of the incumbent whereby he is placed in any of the specified conditions of ineligibility to office;
(5) By the incumbent ceasing to be a resident of the state or of the county, circuit, or district for which he was elected;
(6) By failing to apply for and obtain commissions or certificates or by failing to qualify or give bond, or both, within the time prescribed by the laws and Constitution of Georgia; or
(7) By abandoning the office or ceasing to perform its duties, or

8

determine the meaning of "vacancy." Clark argues that only the limited number of situations listed in that statute may be properly considered a vacancy, and a newly created position is not contained in this list. Clark's argument is misplaced for several reasons. First, it rests on the false premise that the list contained in OCGA § 45-5-1 may provide the sole definition of a constitutional term. Nothing in Art. VI, Sec. VII, Par. III states that the Legislature is given the power to exclusively define the term "vacancy" as it is used therein. To the contrary, the 1983 Constitution's drafters appear to have intended that "vacancy" be interpreted in a broad sense, as they gave the term no limitations.[4] Second, Clark contends that the terminology of OCGA § 45-5-1 directly contradicts OCGA § 15-3-4 (b), and, as such, the latter statute should not be followed. Even if we were to assume that an actual conflict existed, "the courts are not only to be guided by the General Assembly's last expression on a subject,

_____

both.

[4] In comparison, the Governor's ability to fill vacancies in the executive branch appears to be more limited. "When any public office shall become vacant by death, resignation, or otherwise, the Governor shall promptly fill such vacancy unless otherwise provided by this Constitution or by law; and persons so appointed shall serve for the unexpired term unless otherwise provided by this Constitution or by law." 1983 Ga. Const. Art. V, Sec. II, Par. VIII.

9

but the latest declaration controls." (Citations omitted.) <u>Tippins Bank & Trust Co. v. Southern Gen. Ins. Co.</u>, 266 Ga. 97, 98 (464 SE2d 381) (1995). OCGA § 15-3-4 (b) is the last expression, and it allows the gubernatorial appointment of Court of Appeals judges to newly created seats. Finally, Clark's contentions regarding OCGA § 45-5-1 (a) fail because that statute addresses the topic of when an office has been *vacated*, not when a *vacancy* exists. Prior to having an occupant, a newly created office cannot be vacated because no incumbent exists to vacate it. However, the 1983 Constitution allows the Governor to appoint whenever a vacancy exists, not just when an office has been vacated.

Therefore, for all of the reasons discussed above, the broadly used meaning of "vacancy" includes a newly created position on the Court of Appeals.

(b) The history of gubernatorial appointments also gives support to a finding that OCGA § 15-3-4 (b) is constitutional. The Court of Appeals was established in 1906 by constitutional amendment, and the amendment provided explicitly that the newly created judicial offices - the three original seats on the Court of Appeals - were to be filled initially by popular election. See Ga. L. 1906, p. 24. Ten years later, the Court of Appeals was expanded to six judges,

10

and consistent with the explicit direction of the 1906 amendment, the three additional seats were filled initially by election. See Ga. L. 1916, p. 56. In 1945, however, Georgia adopted a new Constitution, and although it authorized the General Assembly to establish new seats on the Court of Appeals by statute, it omitted the provision of the 1906 amendment that newly created seats on the Court of Appeals be filled initially by election. See Ga. Const. of 1945, Art. VI, Sec. II, Par. VIII. In 1960, legislation was passed to add a seventh judge to the Court of Appeals, and although it did not explicitly direct how the new seat was to be initially filled, it clearly contemplated that the seat would be filled prior to any election. Accordingly, a judge was appointed to the seventh seat by then Governor Ernest Vandiver and commissioned for a period prior to running in a general election. See Ga. L. 1960, pp. 158, 160. In 1961, two more positions were created on the Court of Appeals, and, once more, they were initially appointed by Governor Vandiver. See Ga. L. 1961, pp. 140, 142. For the first time after our current constitution was adopted, in 1996, a tenth judge was added to the Court of Appeals, and legislation explicitly provided for an appointment by the acting governor. See Ga. L. 1996, p. 405. Finally, in 1999, two additional judgeships were created, and, again, the legislation establishing the positions

expressly provided that the governor would make appointments to the newly created seats. See Ga. L. 1999, p. 10.

The historical practice is clear. Although Clark and the dissent rely on the use of elections to fill the first six seats on the Court of Appeals, those seats were established under the 1906 constitutional amendment, which explicitly required elections to fill the newly created seats. Although much of the 1906 amendment was carried forward into later constitutions, the provision for new seats to be filled initially by election was omitted from the 1945 Constitution, the 1976 Constitution, and most importantly, the 1983 Constitution. Since 1945, whenever the General Assembly has exercised its constitutional authority to create new seats on the Court of Appeals by statute, it has authorized (explicitly or implicitly) the acting governor to fill those seats initially by appointment, and the governor has done so. "[T]hough that legislative precedent might not be dispositive, it is entitled to some respect."[5] (Citation omitted.)

---

[5] The 1945 Constitution not only omitted the provision that newly created seats on the Court of Appeals be filled initially by election, but it also established a seventh seat on the Supreme Court and provided explicitly that that seat was to be filled initially by gubernatorial appointment. That provision of the 1945 Constitution was the most recent constitutional expression of the will of the People on the way in which a newly created judicial office on a statewide appellate court was to be initially filled.

12

DeKalb County School Dist. v. Ga. State Board of Ed., 294 Ga. 349, 357 (751 SE2d 827) (2103). Moreover, at the time that the 1983 Constitution was enacted, this practice was well under way. Therefore, we must assume that the drafters of the 1983 Constitution were well aware of this practice and saw no need to change it. Instead, they intended for the governor's authority to fill vacancies under Art. VI, Sec. VII, Par. III to extend to newly created seats on the Court of Appeals when the General Assembly has not made other provisions for filling the seats.[6]

4. Although Clark and the dissent contend otherwise, OCGA § 15-3-4 (b) does not serve to wholly disenfranchise the citizens of Georgia with regard to the newly created seats on the Court of Appeals. To the contrary, all three of the

---

[6] We note that, at the regular session of the General Assembly following the effective date of the Georgia Constitution of 1983, bills were passed creating four new seats on superior courts. These bills explicitly stated that the seats would be initially filled by an appointment by the Governor. See Ga. L. 1984, p.434 § 2 (Cobb Judicial Circuit); Ga. L. 1984, p.451 § 2 (Atlanta Judicial Circuit); Ga. L. 1984, p.469 § 2 (Clayton Judicial Circuit); and Ga. L. 1984, p.472 § 2 (Houston Judicial Circuit). "Courts long have acknowledged that, when a legislature enacts a statute that touches upon a constitutional provision close in time to the adoption of that constitutional provision, the statute is powerful evidence of the contemporary understanding of the constitutional provision." (Citation omitted.) DeKalb County School Dist. v. Ga. State Board of Ed., 294 Ga. 359, 355 (1) (a) n.12 (751 SE2d 827) (2013).

13

new judges will be required to run in a nonpartisan general election to keep their new positions. As in the similar case of Perdue v. Palmour, 278 Ga. 217, 221 (600 SE2d 370) (2004),

> [t]his case is not resolved by a subjective opinion of how extensive the power of the governor should be in regard to appointments to elective office. It is determined by the unambiguous mandate of the constitution as ratified by the voters of Georgia. It is about implementing the last expression of the sovereign will of the people, in this case, [the governor's power to fill vacancies under Art. VI, Sec. VII, Par. III of the 1983 Georgia Constitution].

That power enables the governor to appoint Court of Appeals judges to newly created seats.[7] The dissent's analysis, which focuses on language only contained in the 1945 Georgia Constitution, has no bearing on this result, as it is the 1983 Constitution which must inform our opinion. As such, the trial court properly denied Clark's petition for a writ of quo warranto. In addition, for the reasons set forth above, the Governor's cross-appeal must be dismissed as moot.

Judgment affirmed in Case No. S16A0559. Case dismissed in Case No. S16X0560. All the Justices concur, except Benham, J., who dissents.

---

[7] We do not reach any question of whether the General Assembly may create new judicial seats and require that those seats be initially filled by general election.

14

S16A0559.  CLARK et al. v. DEAL, GOVERNOR et al.
S16X0560.  DEAL, GOVERNOR v. CLARK et al.


BENHAM, Justice, dissenting.

I have not been able to bring my mind to concur with my associates in the judgment rendered in this cause. This is to me a source of sincere regret. I esteem it a personal misfortune. I have labored to see this question in the light in which they view it, but have been unable to attain to the same conviction. With profound respect for them, and sincere distrust of the justness of my own conclusions, I am constrained to dissent.

Tuttle v. Walton, 1 Ga. 43, 56 (1846) (Justice Nisbet dissenting).[1]

The Georgia Constitution of 1983 unequivocally states that justices of the Georgia Supreme Court and judges of the Georgia Court of Appeals "shall be elected."  Ga. Const. of 1983, Art. VI, Sec. VII, Para. I.  The Georgia Constitution also provides that "vacancies" can be filled by the governor.  Ga. Const. of 1983, Art. VI, Sec. VII, Para. III.  Although the word "vacancies" is

---

[1]This quote is taken from the first dissent published in the first volume of the Georgia Reports.

not defined in Article VI of the 1983 constitution, historically, in this state, a vacancy is an event "which causes an unexpired term."  See, e.g., Ga. Const. of 1976, Art. VI, Sec. II, Paras. III and VIII; Ga. Const. of 1945, Art. VI, Sec. II, Paras. III and VIII.  See also, e.g., Hooper v. Almand, 196 Ga. 52, 59 (25 SE2d 778) (1943) (the governor's right to appoint contemplates vacancies that occur within the term; an unexpired term);[2] Stephens v. Reid, 189 Ga. 372, 377-379 (6 SE2d 728) (1939) (by 1896, it was the goal of the legislature to have judges elected by the people; only vacancies which caused an unexpired term were filled by executive appointment); Pittman v. Ingram, 184 Ga. 255 (190 SE 794) (1937) (a vacancy caused "by death or resignation or otherwise" does not refer to a position where no one has been elected).  Such "legislative precedent ...is entitled to some respect."  DeKalb County School District v. Georgia State

---

[2]In Hooper v. Almand, Humphries was nominated to succeed himself in the Atlanta Judicial Circuit at the Democratic state convention on October 7, 1942. Humphries died 15 days later on October 22, 1942. The general election was to be held on November 3, 1942. On October 24, two days after Humphries' death, the governor appointed Almand to fill the position, despite the fact that Hooper secured the most votes in the election days later.

This Court examined the issues of vacancy and the power of gubernatorial appointment and found that "vacancy" had no technical meaning. Hooper v. Almand, 196 Ga. at 59.  Rather, this Court reasoned, "vacancy" applies not to the incumbent, but to the term or office, depending upon the context of a statute or constitutional provision in which the term is used. Id. The correct construction of "vacancy" is a vacancy in term given the subject matter and context of the gubernatorial appointment provision; and, an unexpired term, in the minds of the framers, was the remaining portion of a definite, fixed term in which a vacancy had been occasioned by death, resignation, or some other cause. Id. at 59, 66.

Board of Education, 294 Ga. 349, 357 (751 SE2d 827) (2013).

Indeed, the above-described understanding of vacancy is consistent with the ordinary meaning of vacancy at the time the 1983 Georgia Constitution was drafted and enacted. For example, the full definition of "vacancy" contained in Black's Law Dictionary (5th Ed. 1979) provides:

Vacancy. A place or position which is empty, unfilled, or unoccupied. An unoccupied or unfilled post, position or office. An existing office, etc., without an incumbent. The state of being destitute of an incumbent, or a proper or a legally qualified officer. *The term is principally applied to an interruption in the incumbency of an office*, or to cases where the office is not occupied by one who has a legal right to hold it and to exercise the rights and perform the duties pertaining thereto. The word "vacancy," when applied to official positions, means in its ordinary and popular sense, that an office is unoccupied, and that *there is no incumbent who has a lawful right to **continue** therein until the happening of a future event*, though the word is sometimes used with reference to an office temporarily filled.

3

(Emphasis supplied.) The above-referenced definition coincides with Georgia's historical understanding that a vacancy, for the purposes of gubernatorial appointment, is when an existing incumbency has been interrupted and there is no incumbent who can legally continue to serve. Furthermore, Article V, Section II, Paragraph VIII (a) of the 1983 Georgia Constitution, which describes the governor's appointment powers regarding "any public office," provides that a gubernatorial appointee is to serve "for the **unexpired term**." (Emphasis supplied.) The situation at bar is not an existing incumbency that has been interrupted; but rather is a newly created position that has never been occupied for any period of time. A newly created position cannot logically have an unexpired term that would need to be filled by appointment.[3]

Given the extensive history showing that the governor appoints when the vacancy in question has caused an unexpired term, it is hard to fathom the executive, legislative, and now the judicial branches' departure from the letter and spirit of our Constitution. It seems this devolution began in the 1960s when

---

[3]I note that our decision in Perdue v. Palmour, 278 Ga. 217 (600 SE2d 370) (2004), is not applicable to the case at bar because the judicial vacancy at issue in that case was created when the incumbent resigned, i.e., when the incumbency was interrupted. Consequently, there was no dispute that the governor was authorized to appoint in that situation. Id. at 218. Therefore, the majority's reliance on that case is misplaced.

4

Governor Vandiver issued executive orders filling newly created judgeships on the Court of Appeals with his appointees. It is clear that Governor Vandiver had no constitutional authority for these actions. The Georgia Constitution of 1945, which was in effect at that time, provided as follows:

> In case of **any vacancy which causes an unexpired term** [of a Justice of the Georgia Supreme Court], the same shall be filled by executive appointment, and the person appointed by the Governor shall hold his office until the next regular election, and until his successor **for the balance of the unexpired term** shall have been elected and qualified.

> \*\*\*

> The times and manner of electing Judges [of the Court of Appeals], and the mode of filling **a vacancy which causes an unexpired term**, shall be the same as are or may be provided for by the laws relating to the election and appointment of Justices of the Supreme Court.

Ga. Const. of 1945, Art. VI, Sec. II, Paras. III and VIII (emphasis supplied).

5

The new judgeships in 1960[4] and 1961[5] were not vacancies causing unexpired terms and so Governor Vandiver was not constitutionally authorized to fill those positions by executive order or otherwise. Morever, the legislation which created the seventh, eighth and ninth judgeships did not grant Governor Vandiver any explicit authority to appoint judges for the new positions.[6] Yet, it appears no one challenged the constitutionality of Governor Vandiver's actions in 1960 and 1961 and no one challenged the constitutionality of any of the subsequent gubernatorial appointments to newly created Court of Appeals judgeships in 1996[7] and 1999.[8] The fact that these gubernatorial appointments went unchallenged, however, does not cure the constitutional problem at stake

---

[4]See Ga. L. 1960, p. 160 (expanding the Court of Appeals to a seventh judge).

[5]See Ga. L. 1961, p. 140 (expanding the Court of Appeals to an eighth judge and a ninth judge).

[6]The tenets of statutory construction likewise prohibit us from presuming that the legislature gave any implicit authority for Governor Vandiver to fill the judgeships by appointment. See Turner v. Georgia River Network, 297 Ga. 306, 308 (773 SE2d 706) (2015) ("'*expressio unius est exclusio alterius* (expression of one thing implies exclusion of another) and *expressum facit cessare tacitum* (if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded)'").

[7]See Ga. L. 1996, p. 405 (expanding the Court of Appeals to a tenth judge). It is worth noting that this 1996 legislation was the first time the General Assembly explicitly stated the governor could appoint persons to fill the newly created judgeships.

[8]See Ga. L. 1999, p. 10 (expanding the Court of Appeals to an eleventh judge and a twelfth judge).

in the present controversy. The majority opinion has failed to explain how executive and legislative action cloaked as tradition, or what the majority terms as a "standard practice," which was not in fact the standard, can trump the constitution of our state. See, e.g., <u>Youngstown Sheet & Tube Co. v. Sawyer</u>, 343 U.S. 579, 610 (72 SCt 863, 96 LEd 1153 (1952) (Frankfurter, J., concurring) ("The Constitution is a framework for government. Therefore the way the framework has consistently operated fairly establishes that it has operated according to its true nature. Deeply embedded traditional ways of conducting government cannot supplant the Constitution or legislation, but they give meaning to the words of a text or supply them."). Here, both the history and the constitutional language adopted over the years show that the governor is only authorized to appoint appellate judges when a vacancy causes an unexpired term.[9]

Furthermore, no reason has been put forward as to why the General Assembly did not, could not, or would not create and time the fulfillment of these new judgeships with a general election in compliance with Ga. Const. of

---

[9]I express no opinion as to the expansion of the superior and state courts and the merits of filling those new positions by gubernatorial appointment.

1983, Art. VI, Sec. VII, Para. I.  Over a hundred years ago, when the Georgia Court of Appeals was created in 1906, the initial three judgeships were filled by election.  Ga. L. 1906, p. 24, §3.  Then, in 1916, when the legislature first expanded the number of seats on the Court of Appeals, it did so in a manner that allowed the seats to be filled by election.  See Ga. L. 1916, p.56, §2.[10]  I do not understand why the same cannot be done in 2016.  At the time of my writing this dissent, a general election for nonpartisan positions, including judgeships, is scheduled to take place in May 2016.  Since the appellate judgeships at issue were created on May 6, 2015, the date when Governor Deal signed HB 279 into law, any potential candidates for these judgeships would have had ten months to file a notice of candidacy by March 11, 2016,[11] in time for the May 2016 election and those elected would be on track to take office by January 2017.  The Court of Appeals has been managing its workload with twelve judges for just under two decades, and so there was no urgent need to fill these positions by gubernatorial appointment. As it now stands, the current appointees are not

_____

[10]Judicial candidates were to participate in the November 1916 general election and the winner seated for a term beginning in January 1917.  Id.

[11]See http://sos.ga.gov/index.php/elections/2016_election_dates (Accessed March 23, 2016).

required to run for election until 2018 and will be in place for two years[12] without their stewardship having been sanctioned by the people of Georgia. This result is particularly egregious because "[t]he right to vote is fundamental, forming the bedrock of our democracy." (Citations omitted.) Favorito v. Handel, 285 Ga. 795 (1) (a) (684 SE2d 257) (2009).

While I cannot change the past, I can be vigilant in the present and sound the alarm for the future. I believe that the legislation allowing these gubernatorial appointments is unconstitutional and I believe the people of Georgia have been deprived of their constitutional right to elect the appellate judges who ultimately have the last say over their issues and disputes. As such, I respectfully decline to join today's majority opinion.

---

[12]The new judges' appointments end December 31, 2018.