**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 1, 2016**

# In the Court of Appeals of Georgia

A16A0245. EVANS v. GWINNETT COUNTY PUBLIC
          SCHOOLS.

MERCIER, Judge.

Phillip Evans appeals an order of the Superior Court of Gwinnett County dismissing his complaint against the Gwinnett County Public Schools (the "School System"). Evans contends that the trial court erred by ruling that a declaratory judgment may not issue to address the validity of a proposed future action, by ruling that the School System has sovereign immunity against state law claims, by ruling that the threat of arrest cannot constitute a Fourth Amendment violation, and by failing to consider the availability of damages as a remedy. Finding no error, we affirm.

Evans is a resident of Gwinnett County, and in 2014 his child attended public school in Gwinnett County. The school his child attended is owned and operated by the School System. Evans possesses a Georgia Weapons Carry License ("GWL") pursuant to OCGA§ 16-11-129. Under OCGA § 16-11-127.1 (b) (1), it is a crime to carry a firearm in a "school safety zone." The school which Evans's child attended is a "school safety zone" as defined by OCGA § 16-11-127.1 (3).

During the 2014 legislative session the General Assembly passed House Bill No. 826 and House Bill No. 60. House Bill No. 60 ("HB 60") prohibited anyone from carrying any weapon (including a pistol or revolver) in a school safety zone, with the exception that a GWL holder is permitted to do so when he "carries or picks up" a student. See HB 60, Act 604, Ga. L. 2014. In contrast, House Bill No. 826 ("HB 826") contained provisions that expressly conflicted with HB 60. Under HB 826, GWL holders were permitted to possess their licensed firearms within a school safety zone (a term redefined in HB 826). See HB 826, Act 575, Ga. L. 2014. The two bills contained conflicting versions of OCGA § 16-11-127.1. Where HB 60 prohibited possession of a firearm in a school safety zone (except that a GWL holder could when carrying or picking up a student), HB 826 expressly authorized a GWL holder to

2

possess a firearm in a school safety zone without the aforementioned qualifying language.

HB 826 was signed into law by Governor Deal on April 22, 2014, while HB 60 was signed into law on April 23, 2014. See HB 60 and HB 826 supra. The version of OCGA § 16-11-127.1 that was published in the Official Code of Georgia Annotated was the one contained in HB 60. See OCGA § 16-11-127.1 (2014).

After the laws were passed, Evans contacted the School System to ask if, as GWL holder, he would be permitted to carry a licensed firearm in the schools owned and operated by the School System. On July 28, 2014, an official from the School System replied to Evans. The official explained that it was still a crime for Evans to carry a firearm in the School System's schools unless he was picking up or dropping off a student. He explained that if Evans chose to carry a firearm in a School System school, the School System would seek to have him prosecuted, and that they might issue him a criminal trespass warning. Evans did not carry a firearm into a school system school, and was not arrested or prosecuted.

On September 2, 2014, Evans filed a complaint seeking damages, along with declaratory and injunctive relief. Evans's complaint alleges that the School System violated his rights under OCGA §§ 16-11-127.1 and OCGA 16-11-173. Furthermore,

3

he sought a declaration that OCGA § 16-11-127.1 gave GWL holders the right to carry their firearms in a school safety zone. Evans later amended his complaint to include a claim under 42 U.S.C. § 1983 alleging that the School System violated his right against unlawful seizure under the Fourth Amendment of the United States Constitution.

The School System filed an answer along with a motion to dismiss Evans's complaint on October 9, 2014. After a hearing, the trial court entered an order on February 5, 2015, granting the School System's motion to dismiss, dismissing all Evans's claims without prejudice. This appeal followed.

1. Evans argues that the trial court erred by ruling that the School System has sovereign immunity against state law claims. "We review de novo a trial court's grant of a motion to dismiss on sovereign immunity grounds, bearing in mind that the party seeking to benefit from the waiver of sovereign immunity has the burden of proof to establish waiver." *Pelham v. Board of Regents of the University System of Georgia*, 321 Ga. App. 791 (743 SE2d 469) (2013) (citation and punctuation omitted). Moreover, "[a] motion to dismiss asserting sovereign immunity. . . is based upon the trial court's lack of subject matter jurisdiction, rather than the merits of the plaintiff's claim." *Bonner v. Peterson*, 301 Ga. 443 (687 SE2d 676) (2009) (citation omitted).

4

The Georgia Constitution provides that, "sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. Art. I, § II Para. IX (e). We have stated previously that this provision "includes county-wide school districts. . . created pursuant to Art. VIII, Sec. V, Par. I of the 1983 Georgia Constitution and OCGA § 20–2–50. Like the counties within which they are created, such school districts are political subdivisions of the state entitled to the sovereign immunity extended to the state." *Coffee County School Dist. v. Snipes*, 216 Ga. App. 293, 294 (454 SE2d 149) (1995) (citation and punctuation omitted). Accordingly, Evans must show that the General Assembly specifically waived the School System's sovereign immunity with regard to his claims.

Evans argues that such a specific waiver can be found in OCGA § 16-11-173 (b) (1) which provides:

> Except as provided in subsection (c) of this Code section, no county or municipal corporation, by zoning, by ordinance or resolution, or by any other means, nor any agency, board, department, commission, political subdivision, school district, or authority of this state, other than the

5

General Assembly, by rule or regulation or by any other means shall regulate in any manner:

. . .

(B) The possession, ownership, transport, carrying, transfer, sale, purchase, licensing, or registration of firearms or other weapons or components of firearms or other weapons[.]

The statute goes on to establish a private right of action which includes the potential for the recovery of actual damages, equitable relief, and any other relief a court may deem proper. OCGA § 16-11-173 (g). While this statute may constitute a waiver by the General Assembly of the School System's sovereign immunity in some instances, it does not waive the School System's sovereign immunity as to Evans's claims.

The version of OCGA § 16-11-173 on which Evans relies did not become effective until July 1, 2015, and so was not applicable at the time he filed this action. The version of OCGA § 16-11-173 (b) (1) in effect in 2014 provided: "[e]xcept as provided in subsection (c) of this Code section, no county or municipal corporation, by zoning or by ordinance or resolution, nor any agency, board, department, commission, or authority of this state, other than the General Assembly, by rule or regulation shall regulate in any manner: (B) The possession, . . . carrying, . . . of

6

firearms." This version of the statute, which was applicable at the time Evans filed this action, did not specifically include school districts as did the one that became effective on July 1, 2015.

"All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it." *Botts v. Southeastern Pipe-Line Co.*, 190 Ga. 689, 700-701 (10 SE2d 375) (1940) (punctuation omitted). Moreover, "from the addition of words it may be presumed that the legislature intended some change in the existing law." *Board of Assessors of Jefferson County v. McCoy Grain Exchange, Inc.*, 234 Ga. App. 98, 100 (505 SE2d 832) (1998) (citation and punctuation omitted). Applying these principles, if the version of OCGA § 16-11-173 (b) (1) applicable at the time Evans filed this action had waived the sovereign immunity of school districts, it would render the addition of "school district[s]" to the statute meaningless. Given the addition of these words to OCGA § 16-11-173 (b) (1), we must presume that the 2015 amendment was intended as a change to the law. Since the legislature expressly added "school districts" to the organizations regulated by the statute, it follows that under the prior law school districts were not included. Accordingly, the version of OCGA § 16-11-173 (b) (1) applicable at the time this case was filed did not act as a specific waiver of sovereign

7

immunity as to the School System. Thus, the trial court lacked subject matter jurisdiction over Evans's state law claims at the time the suit was filed and dismissal was appropriate. See generally *Bonner,* supra.

2. Moreover, Evans's claims are moot due to the General Assembly's adoption of House Bill No. 90 ("HB 90"). HB 90 was approved by Governor Deal on March 13, 2015, and states specifically that:

> the text of Code sections and title, chapter, article, part, subpart, Code section, subsection, paragraph, subparagraph, division, and subdivision numbers and designations as contained in the Official Code of Georgia Annotated. . . as amended by the text and numbering of Code sections as contained in the 2014 supplements to the Official Code of Georgia Annotated. . . are hereby reenacted.

House Bill 90, Act 9, Sec. 54, Ga. L. 2015. The version of OCGA § 16-11-127.1 printed in the Official Code of Georgia Annotated was the one adopted in HB 60, and any conflict between the two versions was resolved by HB 90. OCGA § 28-9-5 (c) provides that:

> [t]he Code Revision Commission shall prepare and have introduced at each regular session of the General Assembly one or more bills to reenact and make corrections in the Official Code of Georgia Annotated, portions thereof, and the laws as contained in the Code and any pocket part, supplements, and revised volumes thereof. Except as otherwise

8

provided by general law, such reenactment of the Official Code of Georgia Annotated shall have the effect of adopting and giving force and effect of law to all the statutory text and numbering as contained in such volumes, pocket parts, and supplements, including but not limited to provisions as published therein in accordance with subsections (a) and (b) of this Code section.

Thus, by passing HB 90 and expressly reenacting the language of OCGA § 16-11-127.1 taken from HB 60, the General Assembly affirmatively re-adopted the language of HB 60.

"A case is moot when its resolution would amount to the determination of an abstract question not arising upon existing facts or rights." *Brown v. Spann*, 271 Ga. 495 (520 SE2d 909) (1999) (citation omitted). Here, Evans's entire case is predicated on the conflict between HB 60 and HB 826. But HB 90 resolved that conflict by establishing that the language used in OCGA § 16-11-127.1 was the language from HB 60. Accordingly, because the legislature has now affirmatively expressed its intent by adopting the language contained in HB 60, whether the language of HB 826 should have been applicable at the time Evans contacted the School System is now a mere abstract question. We hold that HB 90 establishes unequivocally that the version of OCGA §16-11-127.1 printed in the Official Code of Georgia Annotated

9

is the version the General Assembly intended to pass and be given the full force of the law, such that a person possessing a GWL is prohibited from carrying a firearm in a school safety zone except as provided in OCGA § 16-11-127.1 (c). Thus, the issues raised in Evans's declaratory judgment action are moot.

For this Court to strike down two separate laws duly passed by the General Assembly and signed by the Governor simply because Evans wishes his interpretation of HB 826 to carry the day would be an example of the "judicial activism of the highest order" that Evans so vociferously warns this Court about in his reply brief.

Additionally, Evans's contention that the School System's argument as to HB 90 is improperly being raised for the first time on appeal is unavailing. HB 90 was signed into law on March 13, 2015, and the order dismissing Evans's case was entered on February 5, 2015. Thus, HB 90 was not law at the time this case was before the trial court and the School System could not have raised that particular argument below. In any event, its subsequent passage renders Evans's case moot.

3. However, even if we were to find that both the previous and current versions of OCGA § 16-11-173 (b) (1) acted as a waiver of sovereign immunity as to school districts, and that Evans's case is not moot, Evans's claim still fails. OCGA § 16-11-173 provides that no authority enumerated in the statute shall by way of "rule or

10

regulation or by any other means . . . regulate in any manner" the "possession, ownership, transport, carrying, transfer, sale, purchase, licensing, or registration of firearms or other weapons or components of firearms or other weapons." OCGA § 16-11-173. The only authority which may regulate such activity is the General Assembly. Id.

Here, there is no evidence that the School System has attempted to regulate the possession, transport, or carrying of firearms in any manner. In fact, the only rule or regulation under scrutiny as to the legality of citizens with GWLs being permitted to carry firearms in school safety zones is OCGA § 16-11-127.1, which was passed by the General Assembly. If the School System were to pass its own rules as to the regulation of firearms, that might violate OCGA § 16-11-173. Here, an official with the School System simply informed Evans, a GWL holder, that in his opinion Evans would be in violation of OCGA § 16-11-127.1 if he carried a firearm onto school property, adding that he would notify the authorities if Evans did so. Accordingly, the School System was not in violation of OCGA § 16-11-173 (b) (1) even if the statute did grant a waiver of sovereign immunity at the time the suit was filed.

4. Evans argues that the trial court erred by dismissing his claim under 42 U.S.C. § 1983 for failure to state a claim because a threat of arrest cannot be a Fourth

Amendment violation. A local governing body may be sued for monetary, declaratory, and injunctive relief under 42 U.S.C. § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Department of Social Services of the City of New York*, 436 U. S. 658, 659 (98 SCt 2018, 56 LE2d 611) (1978). To prevail on a claim under 42 U.S.C. § 1983, Evans must demonstrate that the School System subjected him "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Furthermore, he must show that "[the School System's] action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of the County Com'rs of Bryan County, Okl. v. Brown*, 520 U. S. 397, 404 (117 SCt 1382, 137 LE2d 626) (1997). Here, the trial court ruled that Evans's pleadings failed to establish a "seizure" such that he would have a valid claim that his Fourth Amendment rights had been violated. We agree.

Evans cites to *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F. 3d 1244 (11th Cir. 2012) for the statement that:

[t]his court has held that a risk of prosecution is sufficient if the plaintiff alleges (1) that an actual threat of prosecution was made, (2) that prosecution is likely, or (3) that a credible threat of prosecution exists based on the circumstances. To show that a prosecution is likely or a credible threat exists, a plaintiff must show that there is a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement. We look to see whether the plaintiff is seriously interested in disobeying, and the defendant seriously intent on enforcing the challenged measure.

Id. at 1252 (citations and punctuation omitted). While this is an accurate quote from the Eleventh Circuit Court of Appeals, it does not support Evans's argument. The Eleventh Circuit made that statement while considering the question of standing to bring a facial challenge to a statute, not in determining whether a "seizure" had taken place for purposes of a Fourth Amendment analysis. We agree that Evans has standing to bring his claims, however he has not brought a facial challenge to OCGA § 16-11-127.1, and the facts do not support a finding that Evans suffered a deprivation of his Fourth Amendment rights.

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement,

13

through means intentionally applied." *Brendlin v. California*, 551 U. S. 249, 254 (II) (A) (127 SCt 2400, 168 LE2d 132) (2007) (citations and punctuation omitted). To determine whether a "seizure" has taken place within the meaning of the Fourth Amendment, "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Florida v. Bostick*, 501 U. S. 429, 437 (II) (111 SCt 2383, 115 LE2d 389) (1991) (citations and punctuation omitted).

Here, Evans makes no argument that his freedom of movement was ever restrained by police conduct, or that he did not have the freedom to go about his business. Instead, Evans argues that it was the threat of prosecution by a school official that amounted to a seizure and implicated his Fourth Amendment rights. He cites to *Steffel v. Thompson*, 415 U. S. 452 (94 SCt 1209, 39 LE2d 505) (1974) for the proposition that threats of arrest or prosecution can give rise to valid claims under 42 U.S.C. § 1983. However, *Steffel* is distinguishable from the instant case. In *Steffel*, the petitioner and a friend were distributing anti-war handbills on an exterior sidewalk of the North DeKalb Shopping Center. After they declined a request by shopping center employees to stop passing out the handbills, the police were called. The police

14

officers told both individuals they would be arrested for violating a criminal trespass statute if they continued passing out the handbills. The individuals left the shopping center to avoid arrest. Two days later, the scene repeated itself, and while the petitioner left to avoid arrest, his companion stayed and was arrested. The petitioner brought suit against the DeKalb County Solicitor, the DeKalb County Police, as well as the both the owner and the manager of the North DeKalb Shopping Center to prevent enforcement of the statute at issue. See *Steffel* at 455-456.

In *Steffel*, the petitioner was actually threatened with arrest and prosecution by police, and his companion was in fact arrested. The instant case is distinguishable because Evans was never approached by police and threatened with arrest or prosecution. Moreover, Evans does not claim that the law itself is unconstitutional or being unconstitutionally applied to him. Instead, Evans is claiming he was seized in violation of the Fourth Amendment because a school official informed him that if he carried a weapon into a school safety zone he would be in violation of the law. However, there is no evidence that Evans was approached by any law enforcement official and threatened with arrest or prosecution. Absent more, the mere opinion and statement of intent by a school official is not a seizure for purposes of a claim under the Fourth Amendment. Thus, when we examine the totality of the circumstances we

15

conclude that Evans has failed to show that he suffered an injury sufficient to state a claim under the Fourth Amendment, and the trial court was correct to dismiss his 42 U.S.C. § 1983 claim. See *Solano-Rodriguez v. State*, 295 Ga. App. 896, 901 (1) (673 SE2d 351) (2009) ("Taking into account all of the foregoing circumstances, we conclude that the trial court was authorized to find that no seizure occurred").

5. In light of our finding that the trial court did not err in dismissing Evans's complaint, we need not address his remaining enumerations of error.

*Judgment affirmed. Ellington, P. J., and Branch, J., concur*.