**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 7, 2022**

# In the Court of Appeals of Georgia

A22A0103. HISE v. BORDEAUX.

DILLARD, Presiding Judge.

Gregory Hise applied for a Georgia weapons carry license ("GWCL"), under OCGA § 16-11-129, with Thomas C. Bordeaux, Jr., a judge of the Chatham County Probate Court. Bordeaux denied the application, but the superior court granted Hise a writ of mandamus, directing issuance of the GWCL. While Bordeaux appealed, Hise filed an action for damages, alleging that (in denying the license) Bordeaux violated his fundamental right to bear arms under the United States Constitution, as well as the Georgia Constitution, and also violated a prohibition against county officials regulating firearms. Bordeaux filed a motion to dismiss for failure to state a claim, which the superior court granted. Hise now appeals that decision, but for the reasons set forth *infra*, we affirm.

The record in this matter—which for the most part is undisputed—shows that on May 6, 2019, Hise filed an application for a GWCL with Bordeaux under OCGA § 16-11-129.[1] Bordeaux issued an order denying Hise's application the same day, citing as grounds for the denial that Hise had been convicted in another state of misdemeanor assault in 1979. In response, Hise filed a mandamus action in the superior court, requesting that Bordeaux be ordered to issue the GWCL. Soon thereafter, Hise moved for summary judgment; and on October 4, 2019, the superior court issued an order granting the motion and directing Bordeaux to issue a GWCL to Hise within ten days. Bordeaux did not immediately comply, which prompted Hise to file a motion for contempt. Bordeaux then moved for reconsideration, and when the superior court denied that motion, he appealed to this Court.[2]

---

[1] *See* OCGA § 16-11-129 (a) (1) ("The judge of the probate court of each county shall, on application under oath, on payment of a fee of $30.00, and on investigation of the applicant pursuant to subsections (b) and (d) of this Code section, issue a weapons carry license or renewal license valid for a period of five years to any person whose domicile is in that county. . . . Such license or renewal license shall authorize that person to carry any weapon in any county of this state notwithstanding any change in that person's county of residence or state of domicile.").

[2] *See Bordeaux v. Hise*, 355 Ga. App. 688 (845 SE2d 408) (2020).

2

A few weeks after Bordeaux filed his notice of appeal, on November 26, 2019, Hise filed an action against him, in both his official and individual capacities, seeking monetary damages on the grounds that (in denying the GWCL) Bordeaux violated Hise's fundamental right to bear arms under the Second Amendment of the United States Constitution and Article I, Section I, Paragraph VIII of the Georgia Constitution, and that he also violated the prohibition in OCGA § 16-11-173 against county officials regulating firearms. Bordeaux filed an answer and a motion to dismiss for failure to state a claim, arguing that a denial of a GWCL does not constitute a violation of Hise's fundamental right to bear arms under the United States or Georgia Constitution and, in any event, Hise's claims are barred by the doctrines of sovereign, judicial, and official immunity.

Hise filed a response to Bordeaux's motion, and the trial court scheduled a hearing on the matter. But prior to that hearing, this Court affirmed the trial court's earlier ruling granting Hise's writ of mandamus.[3] Consequently, Bordeaux issued the

---

[3] *See id.* at 690-91 (affirming the trial court's judgement because "Hise's filing a mandamus action in the superior court was a proper avenue to appeal the probate judge's decision to deny his application"); *see also* OCGA § 16-11-129 (j) ("When an applicant is otherwise denied a license, temporary renewal license, or renewal license and contends that he or she is qualified to be issued a license, temporary renewal license, or renewal license, the applicant may bring an action in mandamus or other legal proceeding in order to obtain such license.").

GWCL. As a result, Hise withdrew his contempt motion but maintained his action for damages. One month later, the trial court held the hearing on Bordeaux's motion to dismiss, which it ultimately granted. This appeal follows.

In his sole enumeration of error, Hise contends generally that the trial court erred in granting Bordeaux's motion to dismiss for failure to state a claim. But in his brief, he specifically argues—despite not separately enumerating—that all three claims in his complaint are valid and his action is not barred by any form of immunity. Accordingly, we will address each of his claims separately.

This Court conducts a *de novo* review of a trial court's ruling on a motion to dismiss.[4] In doing so, we are tasked with determining whether the allegations of the complaint—when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor—"disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts."[5] But importantly,

---

[4] *See Dove v. Ty Cobb Healthcare Sys., Inc.*, 316 Ga. App. 7, 9 (729 SE2d 58) (2012); *see also Carson v. Brown*, 348 Ga. App. 689, 699 (2) (824 SE2d 605) (2019) (noting that we review a trial court's decision on a motion to dismiss *de novo*).

[5] *Dove*, 316 Ga. App. at 9 (punctuation omitted).

4

we need not "adopt a party's legal conclusions based on these facts."[6] With these

guiding principles in mind, we turn to Hise's specific claims of errors.

1. For starters, Hise argues that by refusing to issue the GWCL after the

superior court granted his writ of mandamus, Bordeaux—in his individual rather than

his official capacity—violated Hise's fundamental right to bear arms under the

Second Amendment of the United States Constitution and Article I, Section I,

Paragraph VIII of the Georgia Constitution. This contention lacks merit. The Second

Amendment of the United States Constitution provides: "A well regulated Militia,

being necessary to the security of a free State, the right of the people to keep and bear

Arms, shall not be infringed." And this amendment guarantees the individual "right

of law-abiding, responsible citizens to use arms in defense of hearth and home."[7] But

---

[6] *Id.* (punctuation omitted); *see Trop, Inc. v. City of Brookhaven*, 296 Ga. 85, 87 (1) (764 SE2d 398) (2014) ("While a trial court is required to consider a non-moving party's factual allegations to be true, it is not required to accept the legal conclusions the non-party suggests that those facts dictate."); *Bankston v. RES-Ga Twelve, LLC*, 334 Ga. App. 302, 304 (1) (779 SE2d 80) (2015) (same).

[7] *District of Columbia v. Heller*, 554 U. S. 570, 635 (IV) (128 SCt 2783, 171 LE2d 637) (2008); *see McDonald v. City of Chicago*, 561 U. S. 742, 791 (V) (B) (130 SCt 3020, 177 LE2d 894) (2010) (holding that the Second Amendment of the United States Constitution applies to the states under the Fourteenth Amendment).

emphasizing that this right is not absolute, the Supreme Court of the United States held in *Heller* that

> nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.[8]

The *Heller* Court further noted that this list of "presumptively lawful regulatory measures" is not exhaustive.[9]

Similarly, the Constitution of the State of Georgia provides that the "right of the people to keep and bear arms shall not be infringed, but the General Assembly shall have power to prescribe the manner in which arms may be borne."[10] And the Supreme Court of Georgia has also "previously interpreted this provision as permitting the State to regulate the right to carry weapons 'to some extent' while

---

[8] *Heller*, 554 U. S. at 626-27 (III).

[9] *Id.* at 627 (III) n. 26.

[10] Ga. Const. Art. I, § I, ¶ VIII.

6

disallowing a law that 'under the name of regulation, amounts in effect, to a deprivation of the constitutional right.'"[11]

Here, Hise seeks monetary damages based on his claims that Bordeaux violated his fundamental right to bear arms under the United States and Georgia constitutions by refusing to issue the GWCL after the superior court granted his writ of

---

[11] *Hertz v. Bennett*, 294 Ga. 62, 68 (3) (751 SE2d 90) (2013) (punctuation omitted); *see Strickland v. State*, 137 Ga. 1, 7 (1) (72 SE 260) (1911) (holding that a statute requiring a person to obtain a license before carrying a pistol or revolver about his person did not violate the state constitutional right to keep and bear arms); *see also Nunn v. State*, 1 Ga. 243, 243 (1846) (holding that statute conflicts with the Second Amendment "so far as it cuts off the exercise of the right of the citizen altogether to bear arms, or, under the color of prescribing the mode, renders the right itself useless").

mandamus.[12] But both of these claims of alleged constitutional violations are barred by the doctrine of judicial immunity.

As the Supreme Court of Georgia has noted, the Supreme Court of the United States has "long recognized the doctrine of judicial immunity which shields judges from being sued and from being held civilly liable for damages based on federal law as a result of carrying out their judicial duties."[13] Georgia law has also "long

---

[12] Although not specifically pleaded in his complaint, Hise asserts on appeal that he is entitled to relief under 42 USC § 1983, which requires a plaintiff to "show that [he] has been deprived of a right secured by the Constitution and laws of the United States, and that the defendant acted under color of state law." *Barrow v. Raffensperger*, 308 Ga. 660, 689 (5) (842 SE2d 884) (2020); *see* 42 USC § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."). Georgia does not have an equivalent to 42 USC § 1983. *See Howard v. Miller*, 222 Ga. App. 868, 872 (1) (c) (476 SE2d 636) (1996) ("[Georgia] [has] no equivalent to 42 USC § 1983, which gives a claim against a state officer individually for certain unconstitutional acts."). But given our holding *infra*, we need not address whether Article I, Section I, Paragraph VIII of the Georgia Constitution affords a right of action for retrospective monetary damages against a public official in his individual capacity.

[13] *Withers v. Schroeder*, 304 Ga. 394, 396 (2) (819 SE2d 49) (2018); *see Forrester v. White*, 484 U. S. 219, 225 (III) (108 SCt 538, 98 LE2d 555) (1988) (noting that judicial immunity developed in medieval times and continues as a solid doctrine in modern jurisprudence); *Stump v. Sparkman*, 435 U. S. 349, 355-56 (II) (98 SCt 1099, 55 LE2d 331) (1978) (explaining that the Supreme Court of the United

recognized the doctrine of judicial immunity for state law claims."[14] Indeed, the

rationale for this doctrine is quite logically that

> [i]f judges were personally liable for erroneous [judicial] decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication. Nor are suits against judges the only available means through which litigants can protect themselves from the consequences of judicial error. Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability.[15]

---

States recognized the doctrine of judicial immunity as early as the late 1800s).

[14] *Withers*, 304 Ga. at 396 (2); *see Calhoun v. Little*, 106 Ga. 336, 339 (2) (32 SE 86, 88) (1898) ("It is universally conceded that judges of courts of superior and general jurisdiction are exempt from liability in damages for judicial acts, even when such acts are in excess of their jurisdiction. This doctrine has become firmly fixed in the jurisprudence of both England and the United States."); *Gault v. Wallis*, 53 Ga. 675, 677 (2) (1875) (noting that a judge is not liable for errors of judgment when acting within the jurisdiction conferred upon him by law); *Upshaw v. Oliver*, 1 Dud. 241 (1832) (same); *Maddox v. Prescott*, 214 Ga. App. 810, 812 (1) (449 SE2d 163) (1994) ("Our courts have consistently held that judges are immune from liability in civil actions for acts performed in their judicial capacity." (punctuation omitted)).

[15] *Forrester*, 484 U. S. at 226-27 (III) (citation omitted); *accord Withers*, 304 Ga. at 396 (2) n. 3.

9

Consequently, there are only "two grounds on which a judge will be denied the absolute protection of judicial immunity: (1) committing an act that is nonjudicial in nature; or (2) acting in the 'complete absence of all jurisdiction.'"[16] And importantly, a judge is not deprived of judicial immunity "simply because [he] has allegedly acted mistakenly, maliciously or corruptly."[17]

In this matter, Hise contends—without citing any supporting case authority—that his claims are not barred by judicial immunity because Bordeaux was acting in the absence of all jurisdiction and committing a nonjudicial act by ignoring the writ of mandamus. But these contentions are without merit.

First, OCGA § 16-11-129 (a) (1) explicitly provides probate judges (such as Bordeaux) with jurisdiction over the issuance of a GWCL.[18] Next, turning to the

---

[16] *Withers*, 304 Ga. at 397 (2) (citing *Mireles v. Waco*, 502 U. S. 9, 11-12 (112 SCt 286, 116 LE2d 9) (1991)); *accord GeorgiaCarry.Org, Inc. v. Bordeaux*, 352 Ga. App. 399, 403 (4) (834 SE2d 896) (2019).

[17] *Withers*, 304 Ga. at 397 (2).

[18] *See supra* note 1 & accompanying text; *see also Withers*, 304 Ga. at 397 (2) (finding that judges were not acting in the absence of all jurisdiction because, at the time, traffic offenses like the one at bar were adjudicated in the DeKalb County Recorder's Court); *Heiskell v. Roberts*, 295 Ga. 795, 801 (3) (a) (764 SE2d 368) (2014) (holding that in considering whether judicial immunity barred claim, it was undisputed that Georgia state court judge had subject matter jurisdiction over traffic cases); *Wilson v. Moore*, 275 Ga. App. 493, 494 (1) (621 SE2d 507) (2005) (stating

question of whether Bordeaux committed a nonjudicial act, "a court looks not to functions actually performed by that party, but to the functions that the law entitles the party to perform."[19] Indeed, the relevant inquiry is "the nature and function of the act, not the act itself."[20] Simply stated, we look to the particular act's "relation to a general function normally performed by a judge."[21] So, in order to determine whether an act is judicial in nature, a reviewing court should consider "(1) whether the act is one normally performed by judges, and (2) whether the complaining party was dealing with the judge in [his] judicial capacity."[22] Here, determining whether to issue a GWCL under OCGA § 16-11-129 was unquestionably a normal function of a

---

that when a judge has subject matter jurisdiction, he is not acting in the absence of all jurisdiction).

[19] *Withers*, 304 Ga. at 397 (2) (punctuation omitted); *accord Arthur Andersen & Co. v. Wilson*, 256 Ga. 849, 849 (353 SE2d 466) (1987).

[20] *Withers*, 304 Ga. at 397 (2) (punctuation omitted); *accord Mireles*, 502 U. S. at 13.

[21] *Withers*, 304 Ga. at 397-98 (2) (punctuation omitted); *accord Mireles*, 502 U.S. at 13.

[22] *Withers*, 304 Ga. at 398 (2) (punctuation omitted).

probate judge, and in seeking to obtain such a permit, Hise was unquestionably

dealing with Bordeaux in his judicial capacity.[23]

Attempting to distinguish Bordeaux's actions from the explicit authority

OCGA § 16-11-129 grants to probate judges, Hise argues that Bordeaux engaged in

a nonjudicial act outside his jurisdiction when he refused to issue the GWCL *after* the

superior court granted his petition for a writ of mandamus. But this argument

conflates refusal with appeal. Hise cites no authority for his contention that Bordeaux

could not seek an appellate court's determination as to whether the writ of mandamus

was properly issued. And regardless, given that we addressed the merits of

Bordeaux's appeal[24] (rather than dismissing it for lack of jurisdiction), that issue has

---

[23] In his reply brief, Hise attempts to counter the undisputed fact that Bordeaux was authorized to issue GWCLs with a lengthy discussion about Georgia being one of the few states that gives such authority to probate judges, and that even in Georgia, such power was not traditionally a responsibility granted to probate judges. But while this discussion is certainly interesting from a legal history perspective, it has no bearing in this matter because OCGA § 16-11-129 clearly provides such authority *now*. Suffice it to say, we are not authorized to either ignore or rewrite statutes. *See West v. State*, 300 Ga. 39, 44 (793 SE2d 57) (2016) ("While this Court has the authority to narrow a statute to avoid unconstitutional infirmities under our system of separation of powers, this Court does not have the authority to rewrite statutes." (punctuation omitted)).

[24] *See Bordeaux*, 355 Ga. App. at 690-91.

already been decided against Hise.[25] Put simply, Hise disagreed with Bordeaux's decision; but "[d]isagreement with the action taken by the judge . . . does not justify depriving that judge of his immunity."[26] And looking at the nature of the function at issue, Bordeaux's appeal of the grant of the writ of mandamus was certainly part and parcel of the judicial process necessary to ultimately resolve whether he was required to issue Hise a GWCL.[27] Indeed, it would be difficult to find a case better exemplifying the importance of judicial immunity than this one, as Hise has attempted to elevate his disagreement with a judicial decision into a lawsuit for retrospective monetary damages, despite the judge's initial error being corrected by the appellate

---

[25] *See Welbon v. State,* 304 Ga. 729, 729-30 (1) (822 SE2d 277) (2018) ("Under the 'law of the case' doctrine, which is applicable to rulings made by appellate courts in both civil and criminal cases, any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be. OCGA § 9-11-60 (h)." ( punctuation omitted)); *see also Green Tree Servicing, LLC v. Jones*, 333 Ga. App. 184, 184 (1) (775 SE2d 714) (2015) (noting that this Court may inquire *nostra sponte* as to whether it has jurisdiction to consider an appeal).

[26] *Stump*, 435 U. S. at 363 (II).

[27] *See Withers*, 304 Ga. at 399 (2) (explaining that the inquiry into judicial immunity requires that we only look at the nature of the function at issue).

process.[28] Given these circumstances, Hise's claims that Bordeaux violated his fundamental right to bear arms under the United States and Georgia constitutions by refusing to issue the GWCL after the superior court granted his writ of mandamus are barred by the doctrine of judicial immunity.[29]

---

[28] *Forrester*, 484 U. S. at 226-27 (III) (explaining that the rationale for judicial immunity is to prevent vexatious litigation attempting to hold judges personally liable for judicial decisions, which would be detrimental to judicial independence and impartiality).

[29] *See Mireles*, 502 U. S. at 12-13 (holding that judge's actions in directing police officers to bring before judge an attorney who was in courthouse were not taken in complete "absence of all jurisdiction," so as to deprive judge of judicial immunity from § 1983 suit, even though judge allegedly directed officers to carry out order with excessive force); *Stump*, 435 U. S. at 362-64 (II) (concluding that because judge, in approving mother's *ex parte* petition to have her mentally challenged daughter sterilized, acted in his capacity judge, and performed type of act normally performed only by judges, the lack of formality with which he proceeded did not render his action "nonjudicial" for purposes of depriving him of absolute immunity from damages liability); *Withers*, 304 Ga. at 398-99 (2) (holding that court administrator's act of preparing a report at the direction of the judge to aid in the judicial process is a function that is judicial in nature and protected by judicial immunity, thus barring plaintiff's § 1983 and state law claims); *Heiskell*, 295 Ga. at 801-02 (3) (a) (holding that former judge was entitled to judicial immunity from liability on counterclaims by county for alleged breach of contract, damages, and intentional infliction of emotional distress arising out of judge's dismissal of 60 traffic cases during remainder of his term after he lost election); *Earl v. Mills*, 275 Ga. 503, 503-04 (1) (570 SE2d 282) (2002) (affirmed that judge was entitled to judicial immunity since he was acting in his judicial capacity when he issued a standing order creating *de facto* family court despite the fact that order was not supported by constitutional provision stating that only legislature could create such courts); *Maddox*, 214 Ga. App. at 812 (1) (holding that probate judge was entitled to judicial

14

2. Hise further contends that by refusing to issue the GWCL after the superior court granted his writ of mandamus, Bordeaux—in his individual *and* official capacity—also violated the prohibition in OCGA § 16-11-173 against county officials regulating firearms. First, in light of our holding in Division 1, *supra*, Hise's claim that Bordeaux violated the statute in his individual capacity is barred by the doctrine of judicial immunity.[30] Additionally, the trial court did not err in dismissing Hise's claim that Bordeaux violated the statute in his official capacity.

It is well settled under Georgia law that "suits against state officers in their official capacities amount to suits against the State itself and are barred by sovereign immunity."[31] And the Supreme Court of Georgia has held that the doctrine "extend[s] not only to the State itself, but also to counties."[32] Furthermore, county officers sued

---

immunity in guardian's action claiming judge improperly approved earlier settlement agreement). *Cf. Bordeaux*, 352 Ga. App. at 403 (4) ("Although judges are immune from liability in civil actions seeking damages for acts performed in their judicial capacity, this immunity does not bar claims for declaratory or injunctive relief." (punctuation omitted)).

[30] *See supra* note 29.

[31] *Lathrop v. Deal*, 301 Ga. 408, 421 (II) (B) (801 SE2d 867) (2017); *accord Price v. Dept. of Transp.*, 257 Ga. 535, 537 (361 SE2d 146) (1987).

[32] *Lathrop*, 301 Ga. at 421 (II) (B).

15

in "their official capacities—since a suit against a county officer in his official capacity is a suit against the county itself—enjoy the same sovereign immunity."[33] Importantly, sovereign immunity can only "be waived by the Constitution itself or the General Assembly, and as to the General Assembly, only by way of a law that specifically provides that sovereign immunity is thereby waived and the extent of such waiver."[34]

---

[33] *Layer v. Barrow Cty.*, 297 Ga. 871, 871 (1) (778 SE2d 156) (2015) (punctuation omitted); *accord Conway v. Jones*, 353 Ga. App. 110, 111 (1) (836 SE2d 538) (2019).

[34] *Lathrop*, 301 Ga. at 422-23 (II) (B) (punctuation omitted); *see* Ga. Const., Art. I, §. II, Par. IX (e) ("Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver."); *Conway*, 353 Ga. App. at 111-12 (1) ("Sovereign immunity can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." (punctuation omitted)).

And in this case, Hise argues that in refusing to issue the GWCL after the superior court granted his writ of mandamus, Bordeaux violated OCGA § 16-11-173 (b) (1) (B), which provides:

> Except as provided in subsection (c) of this Code section, no county or municipal corporation, by zoning, by ordinance or resolution, or by any other means, nor any agency, board, department, commission, political subdivision, school district, or authority of this state, other than the General Assembly, by rule or regulation or by any other means shall regulate in any manner . . . [t]he possession, ownership, transport, carrying, transfer, sale, purchase, licensing, or registration of firearms or other weapons or components of firearms or other weapons . . . .

The statute also establishes a private right of action, which includes the potential for the recovery of actual damages, equitable relief, and any other relief a court may deem proper.[35] And given this language, Hise asserts that sovereign immunity has been waived.

Nevertheless, even if we were to find that OCGA § 16-11-173 (b) (1) and (g) evince a waiver of sovereign immunity as to Bordeaux's actions in his official capacity, Hise's claim still fails. As previously noted, OCGA § 16-11-173 provides that no authority enumerated in the statute shall by way of "rule or regulation or by

---

[35] *See* OCGA § 16-11-173 (g).

17

any other means . . . regulate in any manner" the "possession, ownership, transport, carrying, transfer, sale, purchase, licensing, or registration of firearms or other weapons or components of firearms or other weapons," and the only authority which may regulate such activity is the General Assembly.[36] Regardless, there is no evidence Bordeaux attempted to regulate the possession, transport, or carrying of firearms in any manner. Rather, the only rule or regulation at issue was Bordeaux's determination as to whether Hise was entitled to a GWCL under OCGA § 16-11-129, which is a statute passed by the General Assembly. As a result, Bordeaux merely construed that statute and initially concluded Hise was not entitled to a GWCL. But such a construction, even after it was determined to be in error, does not amount to regulation. Indeed, were it otherwise and we followed Hise's logic, every ruling by a probate judge on a GWCL application under OCGA § 16-11-129—whether he granted it, properly denied it, or erroneously denied it—would constitute regulation in contravention of OCGA § 16-11-173. We do not agree with the implication that the General Assembly would pass a statute that runs afoul of another statute every

---

[36] *See* OCGA § 16-11-173 (b) (1) (B).

18

time the former was applied.[37] Accordingly, Bordeaux did not violate OCGA § 16-11-173 (b) (1), even if the statute does possibly grant a waiver of sovereign immunity in other contexts (a question we need not reach in this appeal).[38]

For all these reasons, we affirm the trial court's ruling to grant Bordeaux's motion to dismiss.[39]

*Judgment affirmed. Mercier and Markle, JJ., concur.*

---

[37] *See Evans v. Gwinnett Cty. Public Schools*, 337 Ga. App. 690, 693 (1) (788 SE2d 577) (2016) ("All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it." (punctuation omitted)).

[38] *See id.* at 695-96 (3) (holding that school system did not regulate possession or carrying of firearms in any manner in violation of OCGA § 16-11-173 (b) (1), when school official informed father of student at school that, in his opinion, father, who held GWCL, would be in violation of statute governing weapons in school safety zones if he carried firearm onto school property and that he would notify authorities if father did so).

[39] This Court may affirm a trial court's grant of a motion to dismiss if it is right for any reason, so long as the argument was fairly presented to the court below. Here, Bordeaux asserted several forms of immunity in his answer and motion to dismiss. *See GeorgiaCarry.Org. Inc. v. Bordeaux*, 360 Ga. App. 807, 812 (2) n.3 (861 SE2d 649) (2021) ("While it appears that the trial court granted the motion to dismiss because the controversy was moot rather than based upon a hypothetical or future contingency, we will affirm the court if it is right for any reason."); *Robinson v. Becker*, 265 Ga. App. 692, 695 n.18 (595 SE2d 319) (2004) ("Although the trial court apparently did not base its dismissal of appellant's civil rights claim on judicial immunity, we will affirm a judgment that is right for any reason.").